First Division
July 17, 2006

1-05-3284

ARCADY TROGUB and ROZALYA TROGUB,    )
                                            )
     Plaintiffs-Appellants,       )
                                            ) Appeal from
        v.                           ) the Circuit Court
                                            ) of Cook County
MATTHEW K. ROBINSON,           )
                                          ) 04 M 300760
     Defendant                 )
                                          ) Honorable
(Government Employees Insurance    ) Michael T. Healy,
Company,                         ) Judge Presiding
                                          )
     Respondent-Appellee).       )

JUSTICE McBRIDE delivered the opinion of the court:

Plaintiffs Arcady and Rozalya Trogub accepted $10,000 to settle a lawsuit they filed against defendant Matthew K. Robinson after a minor two-car collision on August 28, 1999, near the intersection of Milwaukee Avenue and Lake Cook Road in Wheeling, Illinois.  Robinson rear-ended the Trogubs' southbound vehicle. The Trogubs' automobile insurance carrier, respondent Government Employees Insurance Company or GEICO, paid $7,650 for the Trogubs' resulting medical care and sought a portion of the Robinson settlement proceeds based on a subrogation clause in GEICO's written insurance policy.  The circuit court determined GEICO was entitled to subrogate $7,650, less 40% to reflect the attorney fees the Trogubs had agreed to pay on the amount recovered in the action and less $336 the Trogubs incurred in litigation expenses, for a net recovery to GEICO of $4,254.  The Trogubs appeal, contending GEICO is not entitled to any part of

the Robinson settlement proceeds or alternatively, that the circuit court should not have disallowed an additional $297 in litigation expenses.  Robinson takes no part in this appeal.

Unless otherwise stated, the following facts are disclosed by the record on appeal.  According to the Trogubs, they originally filed suit against Robinson on November 15, 2000, but voluntarily dismissed the action on June 27, 2003, because their treating physician was not available when the matter was called for trial.  The record on appeal includes a copy of the complaint the Trogubs filed against Robinson on February 24, 2004.  According to the Trogubs, they reached a settlement agreement with Robinson on April 4, 2005.  The record also discloses that on April 5, 2005, the Trogubs filed a "motion to strike [GEICO's] alleged subrogation lien," in which they indicated GEICO "now seeks to attach" the Robinson settlement and that GEICO's conduct was improper because it had not appeared or petitioned to intervene in the Trogubs' suit against Robinson or filed "any other action to recover [its] medical payment."  The Trogubs did not indicate how or when they notified GEICO of their suit, Trogub v. Robinson, No. 04--M1--300760 (Cir. Ct. Cook Co.) (hereinafter Trogub v. Robinson) or how or when the Trogubs were notified of GEICO's intention to pursue its subrogation interest.

On May 3, 2005, GEICO filed an appearance in Trogub v. Robinson, a written response to the Trogubs' motion to strike the lien, and a cross-motion to sanction the Trogubs' attorney

1-05-3284

pursuant to Supreme Court Rule 137 for filing a motion that was not well grounded in fact or law in order to harass or delay GEICO's ability to enforce its subrogation rights. 155 Ill. 2d R. 137. GEICO's written response included a copy of its insurance contract with the Trogubs, which stated in relevant part:

> "CONDITIONS
>
> The following conditions apply to this Coverage:
>
> * * *
>
> 5. SUBROGATION
>
> When we make a payment under this coverage, we will be subrogated (to the extent of payment made by us) to the rights of recovery the injured person or anyone receiving the payments may have against any person or organization. Such person will do whatever is necessary to secure our rights and will do nothing to prejudice them.
>
> This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible."

GEICO also attached copies of its business records indicating the insurance company made payments on the Trogubs' behalf to Spevak Medical in Wheeling, Illinois.

1-05-3284

     In the reply brief the Trogubs filed in support of their motion to strike GEICO's lien, the Trogubs indicated that when they agreed to settle with Robinson for $10,000, they were operating under the "reasonabl[e] belie[f]" that GEICO had already enforced its subrogation rights against Robinson's insurer, State Farm Insurance. The Trogubs did not provide any facts or otherwise explain why this belief was "reasonable" or disclose whether they had been represented by counsel at the time. They further indicated, however, that by the time their lawyer took his litigation expenses and 40% contingency fee and GEICO took its share, the Trogubs would have little cash to show for their personal injury action, and they argued these circumstances would have "a chilling effect" on all subsequent small personal injury actions.

     On June 7, 2005, the circuit court denied the cross-motions.

     After the circuit court indicated GEICO was entitled to subrogate and declined to strike the lien, the Trogubs filed a motion and an amended motion to adjudicate the amount of the lien. In the amended motion, the Trogubs indicated they still objected to GEICO's position, but were willing to address the amount GEICO might be entitled to, because the question was delaying payment from Robinson. They reiterated that their attorney was entitled to 40% of the lawsuit's proceeds and further stated:

          "3. Plaintiffs have incurred the

1-05-3284

    following litigation expenses:

a.  Clerk - 11/15/00 - Initial     $220.00
    Filing

b.  Sheriff - 11/15/00 - Service     33.00
    Attempt

c.  Clerk - 1/26/00 - Alias Summons   5.00

d.  Special Process Server -         75.00
    12/30/00

e.  Clerk-2/24/04-Refiling [after   271.00
    voluntary nonsuit]

f.  Sheriff - 2/2/04 - Service       33.00
    Attempt

g.  Clerk - 4/27/04 - Alias           6.00

h.  Sheriff-4/27/04-Service          34.20

i.  McMorke [*sic*] Court Reporters -  90.00
    3/5/05

j.  Postage, copying, phone, etc.    54.00

k.  Police Report                     5.00
                      TOTAL     $826.20"

In a written response, GEICO pointed out that no attorney-client fee agreement or expense receipts or citation to case law

had been provided in support of the claimed expenses and fees, particularly where counsel was seeking more than the usual 33.33% contingency fee and the expenses of a different lawsuit. GEICO suggested that counsel receive the standard one-third or $2,550 of the $7,650, and that the expense claim be reduced to $263. GEICO also asked the court to order the reimbursement of its appearance fee, since GEICO had appeared (as "Leinholder Respondent") only to defend the Trogubs' motions regarding its lien.

In reply, the Trogubs and their attorney tendered affidavits attesting to the 40% contingency agreement. The Trogubs further swore they had not been aware that GEICO paid their medical bills or that GEICO had subrogation rights. Counsel also tendered a $90 expense receipt from McCorkle Court Reporter, Inc.

As indicated above, on September 13, 2005, the circuit court ruled that GEICO was entitled to $7,650, less $3,060 (40%) for the Trogubs' attorney fees, and $336 in litigation expenses, for a net recovery of $4,254 from the $10,000 settlement. The circuit court disallowed all the litigation expenses purportedly incurred in 2000 in the Trogubs' first action against Robinson (designated as items a through j in the Trogubs' motion), and disallowed the unexplained entry for "Postage, copying, phone, etc." in the present action (designated as item j in the Trogubs' motion). The circuit court determined the allowable expenses totaled $439 and that GEICO's proportionate share of the allowed

expenses was 76.50%, or $336.  The circuit court also ordered the clerk of the circuit court to reimburse GEICO's $143 appearance fee.

The following principles are generally relevant to this appeal.  "Subrogation simply means substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights against the defendant." D. Dobbs, Law of Remedies ℂ 4.3(4), at 604 (2d ed. 1993). "Factually, the case arises because, for some justifiable reason, [a party] has paid a debt owed by the defendant."  D. Dobbs, Law of Remedies ℂ 4.3(4), at 604 (2d ed. 1993).  "Having paid the defendant's creditor, the [party] stands in the creditor's shoes *** and 'is entitled to exercise all the remedies which the creditor possessed against the defendant."  D. Dobbs, Law of Remedies ℂ 4.3(4), at 604 (2d ed. 1993), quoting *American Surety Co. of New York v. Bethlehem National Bank of Bethlehem*, 314 U.S. 314, 317, 86 L. Ed. 241, 244, 62 S. Ct. 226, 228 (1941).  "Thus, a subrogee merely succeeds to the legal rights or claims of a subrogor."  73 Am. Jur. 2d *Subrogation* ℂ 1, at 542 (2001). Subrogation rights originated in common law to prevent unjust or unearned enrichment of one party at the expense of another, but may also be created by statute or contract.  *Aames Capital Corp. v. Interstate Bank of Oak Forest*, 315 Ill. App. 3d 700, 706-07,

1-05-3284

734 N.E.2d 493 (2000). In the case of an insurance contract, subrogation rights arise where (1) a third party has caused a loss and is primarily liable to the insured for the loss, (2) the insurer is secondarily liable to the insured due to an insurance policy, and (3) the insurer pays the insured under that policy, thereby extinguishing the debt owed by the third party. *State Farm General Insurance Co. v. Stewart*, 288 Ill. App. 3d 678, 686, 681 N.E.2d 625 (1997). When an insurance contract gives the insurer the right to subrogate to the extent of its payment, the contract will be enforced as written and the insurer will receive full subrogation, even if the insured's losses exceed the amount it recovers from the tortfeasor and the insurer. *Capitol Indemnity Corp. v. Strike Zone, S.S.B.&B. Corp.*, 269 Ill. App. 3d 594, 596-97, 646 N.E.2d 310 (1995) (rejecting claim that insured should be made whole first); *Eddy v. Sybert*, 335 Ill. App. 3d 1136, 1139, 783 N.E.2d 106 (2003) (insurer's right to subrogation did not depend on whether insured was made whole by settlement with tortfeasor).

The Trogubs raise five main arguments on appeal. The Trogubs' first contention is that GEICO failed to produce "any authenticated evidence" that it paid for their medical care after they collided with Robinson. We find, however, that the Trogubs have waived this contention by failing to cite any portion of the record on appeal indicating that they objected to the circuit court's reliance on GEICO's exhibits. The record on appeal does

not include a transcript of the proceedings conducted on September 13, 2005, or a bystander's report, and thus, there is no way of knowing whether the Trogubs made an objection and preserved this issue for the purposes of appeal.  In order to preserve a question for appellate review, a party must make appropriate objections in the trial court.  *Bohannon v. Schertz*, 21 Ill. App. 3d 149, 151, 315 N.E.2d 316 (1974).  In addition, appellants, which in this instance are the Trogubs, bear the burden of providing a sufficiently complete record to support their claim or claims of error, and any doubt arising from the incompleteness of the record will be resolved against the appellants.  *Linn v. Damilano*, 303 Ill. App. 3d 600, 603, 708 N.E.2d 533 (1999), citing *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392, 459 N.E.2d 958 (1984).  Because the record does not substantiate that the Trogubs objected to the circuit court's reliance on GEICO's exhibits, we decline to address whether the exhibits were sufficiently "authenticated."

The Trogubs' second main contention is that the parties' insurance contract required GEICO to file a separate action in order to pursue its subrogation interest.  More specifically, they argue the contract's subrogation clause, quoted in full above, "uses non-standard language concerning subrogation," "is ambiguous," and should have been construed more favorably to the Trogubs.  The Trogubs fail to explain what a "standard"

1-05-3284

subrogation clause might state or why they consider this particular clause unclear, but *Aames Capital* suggests that even without the contract language, GEICO's involuntary payment of medical expenses that were caused by Robinson's tortious contact with the Trogubs' car would have created an equitable right to recoup those funds. *Aames Capital*, 315 Ill. App. 3d at 706-07 (indicating subrogation rights may arise in equity or contract). In addition, we are not persuaded by the Trogubs' unsupported contention that because the contract language provides GEICO "will have the right to sue or otherwise recover the loss from anyone else who may be held responsible," then the "only inference which can be drawn is that [GEICO must file] a separate subrogation action or a petition to intervene [to recoup its loss]." "The law is well settled that if an insurance contract is so drawn as to be equivocal, uncertain or ambiguous, as to require interpretation because [it is] fairly susceptible to two or more *different, but sensible and reasonable constructions*, the one will be adopted which *** is most favorable to the insured." (Emphasis added.) *Boal v. John Hancock Mutual Life Insurance Co.*, 305 Ill. App. 563, 567. 27 N.E.2d 555 (1940). See also *Bulley & Andrews, Inc. v. Symons Corp.*, 25 Ill. App. 3d 696, 323 N.E.2d 806 (1975) (indicating contract language is ambiguous when it is reasonably susceptible to different constructions). However, we do not consider the GEICO policy to be equivocal, uncertain, or ambiguous; nor do we consider the Trogubs'

1-05-3284

"inference" to be a reasonable interpretation of the clearly worded policy.  "'A policy term is not ambiguous because the term is not defined within the policy or because the parties can suggest creative possibilities for its meaning.'"  *Chatham Corp. v. Dann Insurance*, 351 Ill. App. 3d 353, 358, 812 N.E.2d 483 (2004), quoting *Lampham-Hickey Steel Corp. v. Protection Mutual Insurance Co.*, 166 Ill. 2d 520, 529, 655 N.E.2d 842 (1995).  "In addition, a court may not read an ambiguity into a policy just to find in favor of the insured."  *Chatham Corp.*, 351 Ill. App. 3d at 358.  To the contrary, we find no problem of construction or interpretation and we read "to sue for or otherwise recover" to mean that GEICO may use litigation or other less cumbersome, less expensive means, such as correspondence or telephone calls, to pursue its loss.  Accordingly, we turn to the Trogubs' other arguments.

The Trogubs' third main contention on appeal is that GEICO's failure to comply with various Illinois statutes prevents it from legitimately claiming any of the Robinson settlement proceeds.

For instance, the Trogubs argue section 2-403(c) of the Code of Civil Procedure (735 ILCS 5/2-403 (West 2002)) required GEICO to bring a subrogation action in its own name in order to enforce its subrogation interest and they cite *Nitrin, Inc. v. Bethlehem Steel Corp.*, 35 Ill. App. 3d 577, 342 N.E.2d 65 (1976), as an instance in which this requirement was enforced against an insurer.  We are not persuaded that the statute required GEICO to

1-05-3284

initiate an action, because the statute is entitled "Who may be plaintiff -- Assignments -- Subrogation" instead of "Who shall be plaintiff -- Assignments -- Subrogation" and the body of the statute plainly indicates that in the event a subrogation action is brought, which did not occur here, the subrogation action "shall be brought either in the name or for the use of the subrogee":

> "Who may be plaintiff -- Assignments --
> Subrogation ***
>
> ***
>
> (c) Any action hereafter brought by
> virtue of the subrogation provision of any
> contract or by virtue of subrogation by
> operation of law shall be brought either in
> the name or for the use of the subrogee; and
> the subrogee shall in his or her pleading on
> oath, or by his or her affidavit if pleading
> is not required, allege that he or she is the
> actual bona fide subrogee and set forth how
> and when he or she became subrogee."  735
> ILCS 5/2-403(c) (West 2002).

Since subrogee GEICO did not bring an action but only responded to various motions about subrogation which the Trogubs filed in *Trogub v. Robinson*, section 2-403(c) has no relevance here and is not a basis for concluding that the circuit court's order denying

1-05-3284

the "motion to strike alleged subrogation lien" should be reversed. Moreover, the Trogubs fail to cite and we were unable to find any language in *Nitrin* indicating section 2-403(c) requires a subrogee to enforce its rights by filing a separate action. 735 ILCS 5/2-403(c); *Nitrin*, 35 Ill. App. 3d 577, 342 N.E.2d 65.

The Trogubs similarly contend the intervention section of the Code of Civil Procedure (735 ILCS 5/2-408 (West 2002)) and *Herriford v. Boyles*, 193 Ill. App. 3d 947, 550 N.E.2d 654 (1990), obligated GEICO to bring an intervening petition in *Trogub v. Robinson* to enforce its subrogation interest. Generally, the intervention statute provides that upon timely application, the court may, in its discretion, allow anyone to intervene in an action. 735 ILCS 5/2-408 (West 2002). The Trogubs conclude that since GEICO did not adhere to the cited authority, the circuit court's adverse orders should now be reversed. We were unable to find any relevant language in the cited authority. In addition, we reiterate that GEICO was only responding to various motions which the Trogubs filed regarding GEICO's right to subrogate. We are not persuaded by the Trogubs' bald contention that unless a subrogee such as GEICO motions and obtains leave of court to intervene in an action, the subrogee cannot be permitted to respond to a pending motion that seeks judicial determination of the subrogee's rights.

1-05-3284

The Trogubs also contend that "in essence" GEICO and the Trogubs have respectively become a judgment creditor and debtors, and, therefore, section 12-1001(h)(4) of the Code of Civil Procedure (735 ILCS 5/12-1001(h)(4) (West 2002)) renders the $10,000 settlement payment from Robinson "untouchable" by GEICO. They cite *People* ex rel. *Director of Corrections v. Booth*, 215 Ill. 2d 416, 423, 830 N.E.2d 569 (2005), for the proposition that section 12-1001 "supersede[s] a contractual lien [such as GEICO's] which is not recognized by statute." We find this statutory argument no more persuasive that the Trogubs' two other statutory arguments. Article 12 of the Code of Civil Procedure is entitled "Judgments -- Enforcement," and section 12-1001 in particular renders certain "personal property, owned by the debtor *** exempt from judgment, attachment, or distress for rent." 735 ILCS 5/12-1001 (West 2002). The subparagraphs of the statute specify the exempted property, including, as examples, payments that are traceable to a crime victim's reparation law, a life insurance contract, and, notably, "a payment, not to exceed $7,500 in value, on account of personal bodily injury of the debtor."[1] The Trobugs' reliance on this statute is misplaced since the only "debtor" in this case is Robinson. It is

_____

[1] The statute was recently amended to exempt a payment of up to $15,000 "on account of personal bodily injury of the debtor." Pub. Act 94-293, C 5, eff. January 1, 2006.

˘14˘

undisputed that Robinson, by virtue of his tortious contact with the Trogubs' vehicle in 1999, became liable for their resulting compensable loss, and GEICO, by virtue of its insurance contract with the Trogubs' was secondarily liable for their loss. The subrogation authority cited generally at the outset of this opinion deems Robinson to be a debtor. It also deems the Trogubs to be his creditor as well as GEICO's subrogor, and GEICO to be the subrogee that has "paid the insured under [the] policy, thereby extinguishing the debt of [Robinson,] the third party." *State Farm General Insurance*, 288 Ill. App. 3d 2d at 686-87, 681 N.E. 2d 625. Furthermore, the case the Trogubs rely upon, *Booth*, 215 Ill. 2d at 425, 830 N.E.2d 569, indicates that section 12-1001(h)(4) is triggered when a civil action affects the proceeds of an earlier, separate action or claim, which did not occur here. In *Booth*, a prisoner received a payment in excess of $40,000 in settlement of a personal injury action he brought against a bus company prior to his incarceration. *Booth*, 215 Ill. 2d at 418, 830 N.E.2d 569. After the State became aware that the prisoner obtained this settlement, it brought a separate civil action against him based on a statute that makes incarcerated persons responsible for the expenses of their incarceration. *Booth*, 215 Ill. 2d at 418-19, 830 N.E.2d 569. The State obtained a judgment against the prisoner for more than $40,000 and an order attaching the proceeds of his earlier personal injury lawsuit. *Booth*, 215 Ill. 2d at 420, 830 N.E.2d

569. The court later determined, however, that section 12-1001(h)(4) was applicable and shielded the first $7,500 of the $40,000 personal injury settlement from the State's statutory judgment against the prisoner. *Booth*, 215 Ill. 2d at 421, 830 N.E.2d 569. The case does not indicate in any way that section 12-1001(h)(4) is triggered when there is only one civil action instead of two civil actions, or that section 12-1001(h)(4) is a legitimate means of defeating a contractual right to subrogate.

In short, we are not persuaded that the subrogation clause in the GEICO contract or any section of the Code of Civil Procedure should be construed to obligate GEICO to litigate in order to enforce its subrogation rights.

Our conclusion that GEICO was not required to litigate to recoup its loss also dispenses with the Trogubs' other main contention on appeal that, "Since GEICO did not file a separate subrogation action or file a petition to intervene, GEICO failed to place [the Trogubs] on notice of its intention to assert a lien on the [Trogubs'] recovery in their third party action." GEICO was not required by contract or statute to file a subrogation action or a petition to intervene, or otherwise give the Trogubs notice of its intent to pursue its subrogation rights.

The Trogubs' last contention is that the circuit court incorrectly disallowed reimbursement of $297 to their attorney,

consisting of 76.50% of the $333 in filing fees and service of process expenses incurred in the Trobugs' first action against Robinson, and 76.50% of $54 in expenses purportedly incurred in the present action for "Postage, copying, phone, etc." The Trogubs ask us to remand this cause to the circuit court so that the additional funds can be awarded to their counsel. The Trogubs rely on *Lemmer v. Karp*, 56 Ill. App. 3d 190, 195, 371 N.E.2d 655 (1977), which does not indicate an insurer's subrogation lien should be reduced for expenses incurred in some other action or for undocumented expenses. The Trogubs fail to provide reasoned analysis indicating that we should expand *Lemmer*'s holding and fail to cite any other authority. They contend there is "no precedent" supporting the circuit court's determination -- apparently forgetting that they brought the motion which included their request for fees and costs, and that a moving party always bears the burden of proving its entitlement to fees and costs (*Kaiser v. MEPC American Properties, Inc.,* 164 Ill. App. 3d 978, 983, 518 N.E.2d 424 (1987)), and that the moving party must provide detailed records substantiating the reasonableness of the requested amounts. *Prior Plumbing & Heating Co. v. Hagins*, 258 Ill. App. 3d 683, 688, 630 N.E.2d 1208 (994) (a party seeking attorney fees bears the burden of presenting sufficient evidence from which the trial court can render a decision as to their reasonableness). A fee award cannot be based upon the court's conjecture or on the opinion or

1-05-3284

conclusion of the moving attorney.  *Kaiser*, 164 Ill. App. 3d at 984.

Finally, GEICO asks this court to impose sanctions against the Trogubs' attorney pursuant to Supreme Court Rule 375(b) for bringing a frivolous appeal solely to harass and needlessly increase GEICO's litigation expenses.  155 Ill. 2d R. 375; see *e.g.*, *Sterling Homes, Ltd. v. Rasberry*, 325 Ill. App. 3d 703, 759 N.E.2d 163 (2001) (*sua sponte* raising question of whether sanctions should be imposed on appellant where appeal was an attempt to delay the proceedings and harass the opponent).  While we have found all of counsel's arguments to be wholly unpersuasive, the circumstances do not suggest the appeal was not taken in good faith and was intended to be abusive.  Accordingly, we decline to order the imposition of sanctions.

Affirmed.

CAHILL, P.J., and BURKE, J., concur.