2023 IL App (1st) 230147

FIRST DISTRICT
SECOND DIVISION
October 24, 2023

No. 1-23-0147

| | | |
|---|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, | ) | Appeal from the Circuit Court of |
| Subrogee of Community College | ) | Cook County. |
| District No. 508, d/b/a City Colleges | ) | |
| of Chicago and CMO, a Joint Venture, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | No. 16 L 12712 |
| | ) | |
| v. | ) | |
| | ) | |
| INFRASTRUCTURE ENGINEERING, INC., | ) | |
| | ) | Honorable Patrick J. Sherlock, |
| Defendant-Appellee. | ) | Judge Presiding |

PRESIDING JUSTICE HOWSE delivered the judgment of the court, with opinion.
Justices McBride and Ellis concurred in the judgment and opinion.

OPINION

¶ 1 Plaintiff, Zurich American Insurance Company (Zurich), issued a builder's risk insurance policy to insure a building during its construction. Defendant Infrastructure Engineering, Inc. (Infrastructure Engineering), was a subcontractor on the construction project who was hired to install a system for collecting rainwater. A rainstorm occurred while the building was still under construction, and the basement of the building flooded, causing significant damage. Plaintiff paid out a claim to CMO, the general contractor, in accordance with the policy it issued. Plaintiff, as subrogee of CMO and the owner, a community college, then sued defendant, alleging defendant caused the water damage. Defendant moved for summary judgment, arguing that plaintiff was not entitled to subrogate for the building owner. The trial court agreed, and it granted judgment

in defendant's favor. Plaintiff now appeals, arguing that the insurance policy entitles it to a right of subrogation. For the following reasons, we reverse and remand for further proceedings.

¶ 2                                    BACKGROUND

¶ 3      City Colleges of Chicago (City Colleges) owns and operates Malcom X College. When City Colleges decided to construct a new academic building at Malcom X College, it contracted with a general contractor, CMO. CMO agreed to serve as the general contractor for the construction of the new academic building, providing all necessary labor, material, and equipment to complete the project. The contract between CMO and City Colleges required CMO to purchase and maintain a builder's risk property insurance policy during the period of construction.

¶ 4      CMO purchased the builder's risk policy from plaintiff Zurich. The "named insured" in the policy is CMO, and City Colleges is named as an "additional named insured." Under the policy, CMO was deemed to be the agent for all the other entities insured thereunder.

> "[CMO] shall be deemed the sole and irrevocable agent of each and every Insured
> hereunder for the purpose of giving and receiving notices to/from the Company,
> giving instruction to or agreeing with the Company as respects Policy alteration,
> for making or receiving payments of premium or adjustments to premium, and as
> respects the payment for claims."

The insurance policy also gives Zurich, as the insurer, a right of subrogation for any claims it might pay under the policy.

> "If [Zurich] pays a claim under this Policy, they will be subrogated, to the extent
> of such payment, to all the Insured's rights of recovery from other persons,
> organizations and entities.

* * *

It is a condition of this Policy that [Zurich] shall be subrogated to all the Insured's

unwaived rights of recovery, if any, against any third party Architect or Engineer,

whether named as an Insured or not, for any loss or damage arising out of the

performance of professional services in their capacity as such and caused by any

error, omission, deficiency or act of the third party Architect or Engineer, by any

person employed by them or by any others for whose acts they are legally liable."

¶ 5    On August 17, 2015, while the construction project was ongoing, there was a rainstorm. The stormwater detention system designed by Infrastructure Engineering was not fully installed at the time of the storm. The basement of the academic building flooded. There was damage to the building itself and to its electrical and mechanical equipment. CMO submitted a claim to Zurich for the damage that resulted from the flooding. Zurich made claim payments to CMO totaling $2,998,929.35.

¶ 6    Zurich filed this case against Infrastructure Engineering, as subrogee of City Colleges and CMO. Zurich alleges that Infrastructure Engineering designed a defective stormwater management system which caused the loss at the construction site. Zurich contends that it is entitled to stand in the shoes of City Colleges as a result of making the claim payments under the builder's risk policy.

¶ 7    Infrastructure Engineering filed an initial motion for summary judgment that was denied and is not at issue in this appeal. Infrastructure Engineering subsequently filed a second motion for summary judgment, which is the matter at issue in this appeal. In its second motion for summary judgment, Infrastructure Engineering argued that it was entitled to a judgment of no liability because neither of Zurich's alleged subrogors, CMO or City Colleges, were third-party

beneficiaries of the subcontract between Infrastructure Engineering and Moody Nolan. Infrastructure Engineering argued that while the contract between Moody Nolan and City Colleges provides that City Colleges is a third-party beneficiary of any subcontract between Moody Nolan and its subcontractors, the subcontract between Moody Nolan and Infrastructure Engineering provides that "Nothing contained in this Agreement shall create a contractual relationship with, or a cause of action in favor of, a third party against either the [Moody Nolan] or [Infrastructure Engineering]."

¶ 8      Infrastructure Engineering further argued in support of its second motion for summary judgment that Zurich could not establish the necessary elements to entitle it to a right of subrogation because there was no contractual relationship between CMO and Infrastructure Engineering and because City Colleges suffered no loss and received no loss payment under the insurance policy. Infrastructure Engineering cited *State Farm General Insurance Co. v. Stewart*, 288 Ill. App. 3d 678, 686-87 (1997) to point out that

> "the prerequisites to a subrogation claim are: (1) a third party must be primarily liable to the insured for the loss; (2) the insurer must be secondarily liable to the insured for loss under an insurance policy; and (3) the insurer must have paid the insured under that policy, thereby extinguishing the debt of the third party."

Infrastructure Engineering argued that Zurich "cannot establish the third element of a subrogation claim: namely, that it paid City Colleges under the Builders Risk Policy."

¶ 9      Zurich responded to the motion for summary judgment and acknowledged it was required to show that City Colleges was a third-party beneficiary of the contract between Moody Nolan and Infrastructure Engineering. Zurich also acknowledged that it was required to show that "it is subrogated to City Colleges' rights of recovery." Zurich maintained in its response to the

summary judgment motion that City Colleges was a third-party beneficiary of the subcontract based on the language used in the relevant contracts. Zurich further maintained in its response that "the unambiguous subrogation provision in [its] policy shows that [Zurich] is contractually subrogated to City Colleges' rights of recovery."

¶ 10     In connection with its argument that it was entitled to stand in the shoes of City Colleges, Zurich cited our decision in *Trogub v. Robinson*, 366 Ill. App. 3d 838, 842 (2006), and stated that

> "[t]he prerequisites to subrogation are: (1) a third party must be primarily liable to the insured for the loss; (2) the insurer must be secondarily liable to the insured for the loss under an insurance policy; and (3) the insurer must have paid the insured under that policy, thereby extinguishing the debt of the third party."

Zurich went on to cite authority for the proposition that the policy provisions should control the right to subrogation and the black-letter law explaining the objective of contract interpretation. Zurich then quoted the subrogation provision from the applicable policy and stated that "[b]ased on that provision, [Zurich] is subrogated to City Colleges' rights of recovery." Zurich contended that Infrastructure Engineering was improperly focusing on whether City Colleges received any claim payments under the policy instead of analyzing the subrogation provision in the policy itself. Zurich concluded that, "[u]nder the unambiguous terms of the Policy, [Zurich], to the extent of its claim payments, is subrogated to City Colleges' rights of recovery because City Colleges is an insured under the Policy."

¶ 11     The trial court held a hearing on Infrastructure Engineering's second motion for summary judgment. During the hearing, the trial court asked the parties whether they were aware of any case law addressing the scenario where there are multiple insureds under an insurance policy and

payment was made to an insured who was not the ultimate subrogor in the lawsuit. Neither party was aware of such authority, so the trial court ordered the parties to provide supplemental briefing on the issue.

¶ 12    Infrastructure Engineering submitted its supplemental briefing, alerting the trial court to a case from New York which it argued supported its position on the motion for summary judgment. Zurich, however, used the opportunity to draw a clear distinction between contractual or conventional subrogation and equitable subrogation. Zurich argued in its supplemental briefing that it was not required to establish the requirements for equitable subrogation because the contracts in the case controlled the issue. Zurich provided the trial court with authority in support of its contractual or conventional subrogation argument.

¶ 13    The trial court granted Infrastructure Engineering's motion for summary judgment. In a written order, the trial court found that City Colleges was a third-party beneficiary of the subcontract between Moody Nolan and Infrastructure Engineering. However, the trial court found that Zurich had "not shown it is subrogated to [City Colleges'] rights of recovery." The trial court set forth the same three prerequisites for subrogation that Zurich set out in its response brief and found that Zurich "fails to satisfy the elements of subrogation." The trial court expressly noted that the requirements it recited came from "the case cited by [Zurich]." The trial court explained that City Colleges suffered no loss. The court also explained that it found the supplemental authority submitted by Infrastructure Engineering, the case law from New York, to be persuasive. The trial court concluded that City Colleges "simply sustained no loss and was not paid by the insurer; two requirements for there to be subrogation."

¶ 14    Zurich filed a motion to reconsider the trial court's grant of summary judgment in Infrastructure Engineering's favor. Zurich argued that the trial court failed to consider the

subrogation provision in the applicable insurance policy. Zurich maintained that it was not required to satisfy the traditional three prerequisites for subrogation because its right to subrogate was derived from and controlled by the terms of the insurance policy. The trial court reiterated that it relied on the language of a case cited by Zurich to find that the three prerequisites applied. The trial court also cited a line of cases that it found to reaffirm its decision to grant the motion, authority which stated that the three prerequisites at issue were required for "a claim for equitable *or contractual subrogation*" (emphasis in original). The trial court denied Zurich's motion to reconsider, and Zurich filed this appeal.

¶ 15                                    ANALYSIS

¶ 16     Zurich argues that the trial court erred when it granted Infrastructure Engineering's motion for summary judgment by applying the requirements of equitable subrogation when the court should have determined contractual subrogation applied instead. Infrastructure Engineering argues Zurich forfeited its argument that contractual subrogation applied and that the elements of equitable subrogation are not present.

¶ 17     Summary judgment is appropriate when the pleadings, depositions, admissions, and affidavits, viewed in a light most favorable to the nonmovant, fail to establish that a genuine issue of material fact exists, thereby entitling the moving party to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2022); *Fox v. Seiden*, 2016 IL App (1st) 141984, ¶ 12. If disputes as to material facts exist or if reasonable minds may differ with respect to the inferences drawn from the evidence, summary judgment may not be granted. *Associated Underwriters of America Agency, Inc. v. McCarthy*, 356 Ill. App. 3d 1010, 1016-17 (2005). Summary judgment is encouraged as an expeditious manner of disposing of a lawsuit, but it should only be utilized when a party's right to a judgment is clear and free from doubt. *Adams v. Northern Illinois Gas*

*Co.*, 211 Ill. 2d 32, 43 (2004). We review a trial court's decision to grant summary judgment *de novo*. *Illinois Tool Works Inc. v. Travelers Casualty & Surety Co.*, 2015 IL App (1st) 132350, ¶ 8.

¶ 18                                    Forfeiture of Contractual Subrogation

¶ 19     Infrastructure Engineering argues, as an initial matter, that Zurich has forfeited its argument that it need not meet the prerequisites for equitable subrogation as set forth in our decision in *Trogub*, 366 Ill. App. 3d at 842, because contractual subrogation applied.

¶ 20     Infrastructure Engineering's forfeiture argument is based on the timing and the point in the proceedings at which Zurich first raised the argument that the general prerequisites for subrogation should not apply. Arguments raised for the first time in a motion to reconsider are generally forfeited for purposes of appeal. *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 36. However, as described below, Zurich raised its contractual subrogation argument before the court entered its judgment and before a motion for rehearing was filed.

¶ 21     After the parties submitted their initial briefs on the summary judgment motion, Zurich raised the issue at the hearing on the motion for summary judgment. Subsequently, the trial court requested supplemental briefing. In its supplemental briefing, Zurich argued that contractual subrogation standards should apply instead of the equitable subrogation standard argued by Infrastructure Engineering.

¶ 22     We note that Zurich raised the argument that contractual prerequisites should apply instead of equitable prerequisites when the parties were still in the briefing phase of the motion, at a time before the trial court made its decision. Zurich clearly and forcefully raised the issue in the supplemental briefing for the motion for summary judgment that was ordered by the court. As Infrastructure Engineering acknowledges in its brief on appeal, the trial court "recognized and

disregarded" Zurich's apparent change in positions when the court ruled on the motion for summary judgment. In its order disposing of the motion for summary judgment, the trial court expressly relied on a New York case provided by Infrastructure Engineering in its supplemental briefing, so it is clear that the supplemental briefing was taken into consideration by the trial court before summary judgment was entered.

¶ 23    Zurich thereafter raised the argument in a motion to reconsider, giving the trial court a second opportunity to address the issue. In ruling on the motion to reconsider, the trial court observed that Zurich presented the argument that "it was error for the Court to require it to prove the three elements of subrogation because its case sought contractual subrogation (not equitable subrogation)." The trial court addressed the issue both during summary judgment proceedings and in a motion to reconsider, and it ruled against Zurich on the merits both times.

¶ 24    Perhaps more importantly, Zurich's response to the motion for summary judgment is replete with arguments that the contract should be what controls its right to subrogation. Zurich provided authority for the proposition that the policy provisions should control the right to subrogation, and it urged the court to interpret the plain language of the contract without resort to external sources or rules of construction. Zurich quoted the subrogation provision from the applicable policy and stated that "[b]ased on that provision, [Zurich] is subrogated to City Colleges' rights of recovery." Zurich argued that " '[w]here the right of an insurer to subrogation is expressly provided for in the policy, its right must be measured by, and depend solely on, the terms of such provisions' " (quoting *American Family Mutual Insurance Co. v. Northern Heritage Builders, L.L.C.*, 404 Ill. App. 3d 584, 588 (2010)). Zurich further contended in its response to the motion that Infrastructure Engineering's position in its motion for summary judgment was flawed because it was improperly focused on whether City Colleges received any

claim payments under the policy, instead of being focused on an analysis of the subrogation provision in the policy itself. Zurich concluded in its response that, "[u]nder the unambiguous terms of the Policy, [Zurich], to the extent of its claim payments, is subrogated to City Colleges' rights of recovery because City Colleges is an insured under the Policy." Although Zurich's citation to the prerequisites for subrogation in *Trogub* was misguided, Zurich saved itself from forfeiture by correcting course before it was too late and by making other arguments in its response to the summary judgment motion stressing the determinativeness of the contractual subrogation provision.

¶ 25    Infrastructure Engineering relies on *Evanston Insurance* to argue that "arguments not raised in response to a motion and/or raised for the first time in a motion for reconsideration are forfeited on appeal." Infrastructure Engineering insinuates that an argument is forfeited simply by virtue of the argument not being raised in the initial written response to a motion. However, the authority it relies upon does not stand for such a proposition. In *Evanston Insurance*, our supreme court found an argument forfeited when it was raised for the first time in a motion to reconsider. *Evanston Insurance*, 2014 IL 114271, ¶ 36. The same is true in the other case Infrastructure Engineering relies upon in support of its forfeiture argument. See *Caywood v. Gossett*, 382 Ill. App. 3d 124, 133-34 (2008) (argument made for the first time in a motion to reconsider is forfeited). Those cases recite the general and well-settled rule that a party cannot raise an issue for the first time in a motion to reconsider, but Zurich raised its argument while the summary judgment proceedings were ongoing. Therefore, we reject the argument that Zurich has forfeited the argument it raises here.

¶ 26    Infrastructure Engineering's invited error argument is based on the fact that Zurich itself made the statement that the general prerequisites for subrogation applied here when it responded

to the motion for summary judgment. The doctrine of invited error is a form of procedural default that prohibits a party from complaining of error which that party induced the court to make or to which that party consented. *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004). The rationale behind the rule is that "it would be manifestly unfair to allow a party a second trial upon the basis of error which that party injected into the proceedings." *Id.* For the same reasons that we reject Infrastructure Engineering's forfeiture argument, we reject its invited error argument.

¶ 27    Before summary judgment was entered, Zurich made clear it was pursuing the path of arguing that the contractual subrogation provision should control, to the exclusion of the general prerequisites for subrogation. The trial court and the opposing party were well aware of Zurich's position at a point before summary judgment was entered. Zurich was not moving the goalposts or engaged in gamesmanship to manipulate the proceedings. There is no basis for finding Zurich to have invited an error, nor is there any basis to find Zurich to be estopped from taking the position on appeal that it took during the summary judgment proceedings.

¶ 28    Moreover, the doctrine of forfeiture is a limitation on the parties, not on the court. *Walworth Investments-LG, LLC v. Mu Sigma, Inc.*, 2022 IL 127177, ¶ 94; see also *Sakellariadis v. Campbell*, 391 Ill. App. 3d 795, 800 (2009). We may consider arguments by a party that were not timely raised in the interests of achieving a just result and maintaining a uniform body of precedent (*Golden Rule Insurance Co. v. Schwartz*, 203 Ill. 2d 456, 463 (2003)), especially where the issue is one of law and is fully briefed by the parties on appeal (*Committee for Educational Rights v. Edgar*, 174 Ill. 2d 1, 11 (1996)). According to the above standard, the issue in this case is well-suited to being addressed on the merits because it is an issue of law fully briefed by the parties.

¶ 29                           Contractual Subrogation Applies

¶ 30     Turning to the merits of the parties' arguments, this appeal asks us to decide whether the general prerequisites for equitable subrogation that we have applied in *Trogub* and other cases should be applied when an insurer bases its right to subrogate on an express contractual subrogation provision. Zurich argues that the prerequisites set forth in *Trogub* only apply for equitable subrogation and should not apply to Zurich in this case because it is asserting its right to contractual subrogation. Infrastructure Engineering argues that the prerequisites set forth in *Trogub* apply to any subrogation case, regardless of the basis for the right to subrogate.

¶ 31     To subrogate means to substitute one person for another regarding a legal right or claim. *Sheckler v. Auto-Owners Insurance Co.*, 2022 IL 128012, ¶ 39 (citing Black's Law Dictionary 1726 (11th ed. 2019)). A party that has the right of subrogation is allowed to stand in the shoes of another and assert that person's rights against a third party. *CNA Insurance Co. v. DiPaulo*, 342 Ill. App. 3d 440, 442 (2003). In the insurance context, subrogation typically arises when an insurer pays out a claim to its insured and then seeks to pursue claims against a third party on the basis that the third party is the one who caused the loss to the insured. See *Sheckler*, 2022 IL 128012, ¶ 39; *Benge v. State Farm Mutual Automobile Insurance Co.*, 297 Ill. App. 3d 1062, 1067 (1998). The doctrine rests on the principle that ultimate responsibility for the loss should be placed on the one who deserves to bear the burden of the loss. *CNA Insurance*, 342 Ill. App. 3d at 442.

¶ 32     Based on our review of the authority submitted by the parties, we conclude that the requirements set forth in the insurance policy control Zurich's right to subrogation. Our supreme court has explained that "[t]here are two broad categories of subrogation rights: contractual or conventional rights and common law or equitable rights." *Schultz v. Gotlund*, 138 Ill. 2d 171,

173 (1990). "Contractual rights are those expressly provided for in the insurance policy or other instrument." *Id.* "The other class of right to subrogation, equitable subrogation, is implied to have been intended where necessary to avoid an inequitable and unfair result." *Id.* In this case, we are dealing with Zurich's contractual rights, as it bases its right to subrogation on an express contractual provision in the insurance policy.

¶ 33      Where the right of subrogation is created by the terms of an enforceable contract, the contract terms control, rather than common law or equitable principles. *Northern Heritage*, 404 Ill. App. 3d at 588; see also *American Family Mutual Insurance Co. v. Plunkett*, 2014 IL App (1st) 131631, ¶ 20. In fact, the existence of the unambiguous subrogation contract provision bars the application of the common law doctrine. 34 Ill. L. and Prac. *Subrogation* § 6 (2015) (citing *Evangelical Benefit Trust v. Lloyd's Underwriters Syndicate Nos. 2987, 1607, 1183 & 2001*, No. 09 C 4004, 2012 WL 379632, at *10 (N.D. Ill. Feb. 3, 2012)).

¶ 34      The *Northern Heritage* court approvingly quoted Couch on Insurance to explain that " 'where the right of an insurer to subrogation is expressly provided for in the policy, its right must be measured by, and *depend solely on*, the terms of such provisions.' " (Emphasis added.) *Northern Heritage*, 404 Ill. App. 3d at 588 (quoting 16 Couch on Insurance 3d § 222:23 (2000)). And, as the court observed in *Plunkett*, "since there was a subrogation clause in the insurance policy, established law provide[s] that the policy's contractual terms *** apply, rather than common law or equitable principles." *Plunkett*, 2014 IL App (1st) 131631, ¶ 36. We agree with Zurich that the proper focus in this case is whether Zurich is entitled to subrogate based on the express terms of the builder's risk policy it issued.

¶ 35      Infrastructure Engineering argues, and the trial court found, that regardless of the language of the policy, Zurich was required to show three elements to be entitled to subrogate:

(1) a third party must be primarily liable to the insured for the loss, (2) the insurer must be secondarily liable to the insured for the loss under an insurance policy, and (3) the insurer must have paid the insured under that policy, thereby extinguishing the debt of the third party (citing *Trogub*, 366 Ill. App. 3d at 842). We find those requirements do not strictly control a party's right to subrogation when the party meets all the contractual requirements for subrogation in the controlling contract.

¶ 36    As Infrastructure Engineering points out, some decisions from this court have applied these common law prerequisites in contractual subrogation cases. See *id.*; *State Farm Mutual Automobile Insurance Co. v. Easterling*, 2014 IL App (1st) 133225, ¶ 21; *SwedishAmerican Hospital Ass'n of Rockford v. Illinois State Medical Inter-Insurance Exchange*, 395 Ill. App. 3d 80, 105 (2009); *Economy Premier Assurance Co. v. Country Mutual Insurance Co.*, 2021 IL App (1st) 192364-U, ¶ 65. None of the cases Infrastructure Engineering relies upon really examined the distinction between contractual and equitable subrogation. And none of those cases provides strong or convincing reasoning for applying the requirements for equitable subrogation in the face of an express contractual subrogation provision. Insofar as those cases hold that the three general prerequisites for equitable subrogation control over the express terms of a subrogation clause in a contract, we disagree with their holdings.

¶ 37    The terms of an unambiguous insurance policy should be enforced as written. *King v. Allstate Insurance Co.*, 269 Ill. App. 3d 190, 192 (1994). Where the terms of a contract are clear and unambiguous, they must be enforced as written, and courts cannot rewrite a contract. *Illinois Union Insurance Co. v. Medline Industries, Inc.*, 2022 IL App (2d) 210175, ¶ 68. When the terms of an insurance policy are clear, we do not look to external sources for determining the terms of the agreement; we look to the contract itself. *Plunkett*, 2014 IL App (1st) 131631, ¶ 36;

see *Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 344 (2000) (if the language in the contract is clear and unambiguous, courts must determine the intention of the parties solely from the plain language of the contract and may not consider extrinsic evidence outside the four corners of the document itself).

¶ 38    The federal district court for the Northern District of Illinois recently examined this issue at some length. In *James River Insurance Co. v. Canal Insurance Co.*, 534 F. Supp. 3d 962, 967-69 (N.D. Ill. 2021), the court was presented with arguments from the parties similar to those presented here. The *James River* court was tasked with deciding whether the elements for equitable subrogation needed to be established when a party was pursuing subrogation based on a contract. *Id.* at 968. The district court examined much of the case law discussed above and discussed by the parties in their briefs here, and it concluded that the contractual subrogation clause was controlling so that the court did not need to take into account the elements of equitable subrogation. *Id.* at 969. We find the *James River* court's analysis to be persuasive on this point.

¶ 39    In this case, we have no need to look to the common law or equitable principles that generally apply to subrogation claims based in equity. We have express contractual terms that define the right to subrogation and the scope of that right. See *Northern Heritage*, 404 Ill. App. 3d at 588. Where the right to subrogation is created by an enforceable subrogation clause in a contract, the contract terms, rather than common law or equitable principles, control. *Plunkett*, 2014 IL App (1st) 131631, ¶ 36. Accordingly, we find that the trial court erred when it required Zurich to show compliance with principles outside the contract in order to be able to enforce its right to subrogation.

¶ 40    Having decided that the terms of the contract control whether Zurich is entitled to subrogate, we turn to the language of the builder's risk policy to determine if Zurich is entitled to subrogate for City Colleges. As both parties recognize, this case involves a review of multiple contracts and an insurance policy. An insurance policy is construed like any contract, so the determination of the parties' rights and obligations thereunder is a question of law. *Cook v. AAA Life Insurance Co.*, 2014 IL App (1st) 123700, ¶ 24. The primary goal of contract interpretation is to give effect to the parties' intent. *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2014 IL App (1st) 111290, ¶ 75. A contract must be interpreted as a whole, and the plain and ordinary meaning must be ascribed to unambiguous terms. *Id.* The terms of an unambiguous insurance policy should be enforced as written. *King*, 269 Ill. App. 3d at 192.

¶ 41    The policy expressly provides Zurich with a right of subrogation to the extent of its claim payments.

> "If [Zurich] pays a claim under this Policy, [it] will be subrogated, to the extent of such payment, to all the Insured's rights of recovery from other persons, organizations and entities. ***
>
> *   *   *
>
> It is a condition of this Policy that [Zurich] shall be subrogated to all the Insured's unwaived rights of recovery, if any, against any third party Architect or Engineer, whether named as an Insured or not, for any loss or damage arising out of the performance of professional services in their capacity as such and caused by any error, omission, deficiency or act of the third party Architect or Engineer, by any person employed by them or by any others for whose acts they are legally liable."

16

¶ 42    Infrastructure Engineering argues that City Colleges is not "the Insured" for purposes of the subrogation provision. Infrastructure Engineering contends that the subrogation provision "does not provide Zurich with the right to subrogate on behalf of one insured (City Colleges) based on a loss sustained by, claimed by, and paid to another insured (CMO)." It, therefore, argues that Zurich is not entitled to subrogate for City Colleges based on the terms of the contractual subrogation provision. It contends that

> "[h]ad the parties to the Builders Risk Policy intended to give Zurich the right to subrogate on behalf of every 'Insured' under the Builders Risk Policy whenever Zurich made a claim payment, [the subrogation provision] would have been drafted to reflect that Zurich was subrogated to 'each Insured's rights of recovery' or to 'all Insureds' rights of recovery.' "

¶ 43    The builder's risk policy at issue here identifies CMO as the "Named Insured." The policy identifies the City Colleges as an "Additional Named Insured." The policy designates CMO to be the agent for all the Additional Named Insureds for purposes of paying policy premiums, communicating with Zurich, and receiving claim payments.

> "[CMO] shall be deemed the sole and irrevocable agent of each and every Insured hereunder for the purpose of giving and receiving notices to/from [Zurich], giving instruction to or agreeing with [Zurich] as respects Policy alteration, for making or receiving payments of premium or adjustments to premium, and as respects the payment for claims."

The policy expressly defines the terms "named insured" and "additional named insured." "Named Insured" is:

> "the sole and irrevocable agent of each and every Insured hereunder for the
> purpose of giving and receiving notices to/from the Company, giving instruction
> to or agreeing with the Company as respects Policy alteration, for making or
> receiving payments of premium or adjustments to premium, and as respects the
> payment for claims."

"Additional Named Insured[ ]" is:

> "All owners, all contractors and subcontractors of every tier, and tenants at
> the project location, except as named in A. above, as required by any contract,
> subcontract or oral agreement for the *INSURED PROJECT\**, and then only as
> their respective interests may appear are recognized as Additional Named
> Insureds hereunder. As respects architects, engineers, manufacturers and
> suppliers, their interest is limited to their site activities only."

Finally, under the policy "Insured" collectively refers to the "Named Insured" and all "Additional Named Insured(s)." Thus, the term "Insured" refers to each of the entities insured under the builder's risk policy. The subrogation provision is not limited to the "Named Insured," but instead is extended to the right to subrogate for "the Insured." In other parts of the policy where CMO is addressed directly, the policy uses "Named Insured." As we have recognized, "an 'insured' in a policy is not limited to the named insured but includes anyone insured under the policy." *Chubb Insurance Co. v. DeChambre*, 349 Ill. App. 3d 56, 63 (2004). City Colleges meets the policy's definition of an insured because City Colleges was "required by contract" to be insured under the policy, and City Colleges had an insurable interest in the project.

¶ 44    Infrastructure Engineering contends we should conclude that the subrogation provision in the insurance policy does not provide Zurich with the right to subrogate on behalf of City

Colleges because the undisputed evidence shows that City Colleges did not sustain a loss, claim a loss, or receive payment for a loss. It contends that CMO is the party who sustained the loss, made the claim, and received the claim payment.

¶ 45    The general rule in construction cases is that both the owner and the general contractor have insurable interests in the property until construction is complete. *Intergovernmental Risk Management v. O'Donnell, Wicklund, Pigozzi & Peterson Architects, Inc.*, 295 Ill. App. 3d 784, 791 (1998); see also 11 Couch on Insurance 3d § 155:42 (June 2023 Update) (builder's risk insurance protects the property owner, the contractor, and others with an interest in the project against certain risks of loss to the construction project). The purpose of the builder's risk policy was to provide insurance coverage for the property during the period of the construction. Both City Colleges and CMO had insurable interests that were protected by the builder's risk policy. As the owner of the property under construction, City Colleges had a tangible, insurable interest in the insured property at all times and it suffered a "loss" due to the flooding damage. City Colleges suffered a further loss as a result of the delays occasioned by the flooding. CMO purchased the insurance policy for the benefit of City Colleges, and City Colleges reimbursed CMO for the payment of its share of the premiums, as CMO was required to be the party to make the premium payments as the agent of City Colleges. As the agent for all the additional insureds, CMO was also required to communicate with Zurich on City Colleges' behalf, and CMO was required to be the party to receive the claim payments. City Colleges is an "insured" under the builder's risk policy and, under the policy's subrogation provision, Zurich acquired City Colleges' rights to recovery against third parties for the loss. According to the unambiguous language of the builder's risk policy at issue in this case, Zurich has the right to subrogate for City Colleges under the circumstances presented.

¶ 46    Infrastructure Engineering relies on *New York Board of Fire Underwriters v. Trans Urban Construction Co.*, 91 A.D. 2d 115 (N.Y. App. Div. 1983), in support of its arguments on appeal, and the trial court found the case to be persuasive in its determination that summary judgment was warranted. The trial court explained that *Trans Urban* was persuasive because it showed that Zurich was not entitled to subrogate for City Colleges where City Colleges did not submit the claim for the loss, was not the party that suffered the loss, and did not receive any claim payments for the loss. We find *Trans Urban* to be distinguishable and not suited for application to the particular circumstances presented here.

¶ 47    In *Trans Urban*, the contract between the owner and the general contractor imposed " 'full responsibility' " for the loss on the general contractor. *Id.* at 116-17. The owner was the party who was required to purchase insurance to cover the property during construction. *Id.* at 117. The general contractor was named as one of the additional insureds. *Id.* Following the loss event, the general contractor fully assumed the loss by repairing the damage to the building. *Id.* at 118. The general contractor submitted a claim to the insurer for the repair costs, and checks were issued by the insurer made payable to the owner. *Id.* The owner endorsed the checks over to the general contractor to cover the cost of the repairs it performed. *Id.*

¶ 48    Subsequently, the insurer in *Trans Urban* filed an action against the general contractor for the loss. The insurer alleged that the general contractor was liable for the loss because it performed improper construction before the loss event which allowed the loss to occur. *Id.* The insurer contended that it was entitled to subrogate to the owner's rights against the general contractor. *Id.* at 119. The general contractor moved for summary judgment arguing that no right of subrogation existed because the owner suffered no loss since the general contractor had fully

assumed the risk of loss and then repaired all the damage to the building following the loss event. *Id.* at 118-19.

¶ 49     The court in *Trans Urban* explained that the insurer was not entitled to subrogation based on the general rule that "there is no right of subrogation in favor of the insurer against its own insured" which also includes "that there may be no right of subrogation against a party named as an additional assured in the policy." *Id.* at 120 (citing 16 Couch on Insurance 2d §§ 61:136-61:137 (1983)). In *Trans Urban*, the general contractor was an additional insured under the policy and was not a third party, which is a requirement for subrogation. *Id.* Such is not the situation in this case. Here, Zurich is asserting a claim against a third party, Infrastructure Engineering, who has no rights as an insured under the applicable contract of insurance.

¶ 50     The court in *Trans Urban* also found that the insurer was not entitled to subrogation because the owner, for whom the insurer sought to subrogate, had no claim against the general contractor because the general contractor had borne all the risk of loss in the case and had made all the necessary repairs following the loss event. *Id.* at 122-23. The court explained that since the owner had no cause of action against the general contractor, the insurer similarly would have no action against the general contractor in subrogation. *Id.* at 123. Here, however, Infrastructure Engineering did not agree to bear all the risk of loss, nor has it paid for all the repairs to bear the loss it allegedly caused. The insureds in this case suffered a loss that they are responsible for bearing unless they prove a third party is liable. As explained above, City Colleges suffered a loss and Zurich is entitled to subrogate to City Colleges' rights under the contract of insurance. Accordingly, *Trans Urban* is distinguishable and does not demonstrate that Infrastructure Engineering is entitled to judgment as a matter of law.

¶ 51    Finally, Infrastructure Engineering argues that Zurich is not entitled to pursue its claim because neither City Colleges nor CMO is a third-party beneficiary of the subcontract between Infrastructure Engineering and Moody Nelson. Infrastructure Engineering relies principally on the clause in the subcontract that states "Nothing contained in this Agreement shall create a contractual relationship with, or a cause of action in favor of, a third party against either the Architect or [Infrastructure Engineering]." The trial court rejected Infrastructure Engineering's argument on this point even though the court ruled in its favor on the other grounds presented. We agree with the trial court that City Colleges is a third-party beneficiary of the applicable subcontract.

¶ 52    To determine whether a party is a third-party beneficiary, courts look to the contract to determine the intent of the parties. *Ball Corp. v. Bohlin Building Corp.*, 187 Ill. App. 3d 175, 177 (1989). A third party is a direct beneficiary when the contracting parties have manifested an intent to confer a benefit upon the third party. *Id.* In this case, whether City Colleges is a third-party beneficiary depends on an interpretation of the contracts at issue and presents a question of law which we review *de novo*. See *Marque Medicos Fullerton, LLC v. Zurich American Insurance Co.*, 2017 IL App (1st) 160756, ¶ 46 (the construction, interpretation, or legal effect of a contract is a matter to be determined by the court as a question of law and is reviewed *de novo*). Whether someone is a third-party beneficiary depends on the intent of the contracting parties, as evidenced by the contract language. *Id.*

¶ 53    The contract between City Colleges and Moody Nelson expressly required City Colleges to be a third-party beneficiary of any subcontracts Moody Nelson entered into with its subcontractors.

"In addition, each subcontract for the performance of the Services must provide

that [City Colleges] is a third-party beneficiary to the subcontract and may

enforce any of the subcontract terms including, those pertaining to standard of

performance, indemnity and insurance."

The subcontract between Moody Nelson and Infrastructure Engineering expressly states that any

discrepancies between the subcontract and the prime contract between City Colleges and Moody

Nelson would be controlled by the prime contract. The terms of the prime contract were

incorporated into and became part of the subcontract between Infrastructure Engineering and

Moody Nolan. Accordingly, the term from the prime contract making City Colleges a third-party

beneficiary must be deemed to be a term of the subcontract. To the extent the prime contract and

the subcontract conflict on this point, the prime contract provision would control.

¶ 54      As the trial court correctly found, City Colleges is a third-party beneficiary of the Moody

Nelson-Infrastructure Engineering subcontract. The trial court explained that "the subcontract at

issue fully incorporates the terms of the Prime Agreement" and the prime agreement

"unambiguously demonstrates an intention that [City Colleges] is a third-party beneficiary of the

subcontract." When the terms of the prime contract and subcontract are considered together as a

whole, it is clear that the parties intended City Colleges to be a third-party beneficiary of the

subcontract.

¶ 55                                        CONCLUSION

¶ 56      Based on the foregoing, we reverse and remand for further proceedings.

¶ 57      Reversed and remanded.

23

*Zurich American Insurance Co. v. Infrastructure Engineering, Inc.*,
**2023 IL App (1st) 230147**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 16-L-12712; the Hon. Patrick J. Sherlock, Judge, presiding. |
| **Attorneys for Appellant:** | Patrick C. Hess and Jenna L. Mahoney, of Nielsen, Zehe & Antas, P.C., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Newton C. Marshall and Douglas R. Garmager, of Karbal, Cohen, Economou, Silk & Dunne, LLC, of Chicago, for appellee. |