2024 IL App (1st) 230477

FIFTH DIVISION
September 27, 2024

No. 1-23-0477

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| JOHN LATHON, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 21 CH 2802 |
| THE COURT OF CLAIMS OF THE | ) | |
| STATE OF ILLINOIS, | ) | The Honorable |
| | ) | Alison C. Conlon |
| Respondent-Appellee. | ) | Judge, presiding. |

JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion.
Justice Hyman concurred in the judgment and opinion.
Justice Tailor dissented, with opinion.

**OPINION**

¶ 1        Petitioner John Lathon appeals the circuit court's grant of the respondent Court of

Claims' motion for summary judgment. Lathon had filed a petition in the circuit court for a

writ of *certiorari*, as a means of seeking review of an adverse decision by the Court of Claims.

The Court of Claims had dismissed, for lack of jurisdiction, his tort complaint alleging that

employees of the Illinois Department of Correction (IDOC) had negligently detained Lathon,

a 67-year old inmate with throat cancer,[1] for more than a month after the Prisoner Review

_____

[1]This was Lathon's age and condition at the time of the events at issue.

Board had ordered him released on parole. His tort complaint sought solely monetary damages, and he has since completed his sentence. For the following reasons, we reverse.

¶ 2                                                          BACKGROUND

¶ 3        "The purpose of *certiorari* review is to have the entire record of the inferior tribunal brought before the court to determine, from the record alone, whether the tribunal proceeded according to applicable law." *Reichert v. Court of Claims*, 203 Ill. 2d 257, 260 (2003). Thus, we have reviewed the entire record and summarize it below.

¶ 4                                          A. Before the Prison Review Board

¶ 5        Lathon was in the physical custody of the IDOC, serving a nine-year prison sentence for residential burglary. On May 5, 2016, he was released on mandatory supervised release (MSR). Under Illinois law, MSR is part of the sentence that a court imposes. *People v. Whitfield*, 217 Ill. 2d 177, 188 (2005). However, on August 1, 2016, a warrant was issued declaring that he had violated his MSR terms, and pursuant to that warrant, the 67-year old Lathon was returned to IDOC's physical custody on October 15, 2017.

¶ 6        On November 14, 2017, the Prisoner Review Board held a hearing. At the end of the hearing, the three-person board issued a 3-page form order with boxes that could be checked. However, there were blank lines where the board could enter its factual findings "[r]egarding [the] alleged violations" that had been checked "above." In this box, the board handwrote:

> "Inmate Present
>
> Reportedly went AWOL from halfway home. He states he didn't have 402. But was [unintelligible].[2] Has throat cancer."

---

[2]Although not legible, the sentence could be: "But wasn't loud."

The board checked the box indicating that it found by a preponderance of the evidence that he violated conditions of his release agreement, but it ordered no sanctions. Regarding sentencing, the board checked the box marked "Parole/Release RESUMED" and the box marked "Effective when plans are approved." There were no "Special Conditions," except that Lathon was limited to "only *supervised* contact with mother." The end of the order contained a note "to the Warden" stating, among other things, that: "Any release is contingent upon execution of Parole or Mandatory Supervised Release Agreement."

¶ 7 In a petition subsequently filed by Lathon's counsel in the circuit court, Lathon alleged (1) that he submitted a parole plan to reside with his sister; (2) that the plan complied with all the requirements of the Prisoner Review Board and IDOC; (3) that an "identical plan had previously been approved when [Lathon] was released on parole on May 5, 2016"; (4) that this "parole plan would have been approved on or before November 21, 2017[,] had the state employees for processing the parole plan exercised reasonable care and due diligence"; and (5) that, instead, these employees failed to exercise reasonable care and due diligence, causing him to remain in custody until December 19, 2017.

¶ 8 The record contains a "Parole or Mandatory Supervised Release Agreement" (MSR Agreement) signed by Lathon on December 19, 2017. The two-page form lists numerous form conditions. The one additional condition, typed onto blank lines, is: "CLOSE SUPERVISION REPORT WEEKLY 6 WEEKS." An accompanying "Release Checklist" indicated, among other things, whether DNA was collected, whether he was eligible for MSR, when he was first taken into custody (November 5, 2011), and when his 3-year MSR term was calculated to be discharged (February 28, 2019).

¶ 9    The record also contains an "Administrative Directive" issued by the Director of IDOC, effective February 1, 2016. The last section concerns "Resumption of Parole or Mandatory Supervised Release," and provides:

> "When the Prisoner Review Board orders an offender who was returned as a violator to resume his or her parole or mandatory supervised release, the offender shall be released as expeditiously as possible. The Field Representative shall [perform three tasks]."

The three ministerial tasks are (1) to immediately contact the parole supervisor to advise them of the board's decision; (2) to enter the release plan in the data system, "requesting placement approval as appropriate," and (3) to send to the parole supervisor: the board's order, the signed MSR agreement, the reporting instructions, and the electronic monitoring rules, if such monitoring was ordered.[3] As for the second task, the need to request approval is left to the field representative to determine, "as appropriate." Since the distribution in the third task includes the signed agreement, it is only the first two tasks which need to be completed before the agreement is signed.

¶ 10                              B. Before the Court of Claims

¶ 11    On July 30, 2018, Lathon's counsel filed a "Complaint" in the Court of Claims against the State of Illinois, stating: "This is a tort action against the State of Illinois for false imprisonment and negligence." For the harm of 35 days of prison confinement before his release on December 19, 2017, Lathon sought $50,000. Lathon brought two counts, one for

---

[3]"In this day of fax machines, e-mail and computers even ignoring the ubiquitous telephone there is no reason that an inmate who has served his time and is entitled to his or her freedom should have to wait around in prison while the State bureaucracy transmits an official copy of a court order to the right person in the right facility in the right agency, which in this case somehow took well over a week to accomplish." *Evans v. State*, 55 Ill. Ct. Cl. 395, 399 (2002).

false imprisonment and one for negligent incarceration. Under the first count, Lathon alleged that state employees "acted intentionally and without having reasonable grounds to believe that [he] should be further confined." Under the second count, Lathon alleged that state employees negligently failed to release Lathon on time.

¶ 12    On October 9, 2018, the Court of Claims sent Lathon's counsel a letter informing him that a commissioner had been assigned to conduct a hearing on his claim. In a notice filed October 22, 2018, Lathon was informed that the assigned commissioner would hold a status hearing on his complaint on November 20, 2018. On November 20, 2018, the commissioner entered an order continuing the case until January 31, 2019, "[f]or departmental report." However, a further order noted that the "1-31-2019 status hearing [was] cancelled due to weather conditions," and the status hearing was rescheduled to February 28, 2019. On February 28, an order was entered continuing the case to May 9, 2019, for "Status on Discovery." On May 8, 2019, the Attorney General of Illinois filed a "Departmental Report," which included, among other things, Lathon's MSR Agreement.

¶ 13    On May 9, 2019, the commissioner entered an order continuing the case until June 13, 2019, and noting that the State "anticipates filing" a motion to dismiss. As anticipated, the State filed a motion to dismiss on June 12, 2019. The State argued that Lathon was "essentially" arguing that he should have been "automatically" released pursuant to a prior parole plan that he had already violated. The State argued that any prior plan was now "void" due to Lathon's violation of its terms. The State argued that the Prisoner Review Board's order of November 14, 2017, stated that Lathon should be released "when plans are approved," and that was what happened on December 19, 2017, when Lathon and IDOC signed the MSR agreement. The

State did not offer an excuse or reason for the month-long delay and did not argue that no negligence occurred.

¶ 14       The State argued that IDOC is charged with approving plans for inmates eligible for MSR and that the Court of Claims had consistently held that it lacks jurisdiction to review or interfere with the policies and decisions of state administrative agencies, including IDOC. The State acknowledged that, pursuant to IDOC's own directives, eligible inmates should be released as expeditiously as possible. However, it argued that no specific time is set and that the discretion to approve plans rests with IDOC not the Court of Claims. Lastly, the State observed that there was nothing showing that Lathon had been detained for a period longer than that required by statute, and it cited in support *Terry v. State*, 60 Ill. Ct. Cl. 298, 299 (2007) (although the Court of Claims has jurisdiction to award monetary damages if it has already been determined by another court that a claimant was detained illegally, it does not have jurisdiction to determine whether a claimant is currently being held illegally).

¶ 15       On June 13, 2019, the commissioner granted Lathon 28 days, or until July 11, 2019, to file a response. On July 11, 2019, Lathon filed a response in which he argued that the State offered no excuse for the 35-day delay. Lathon argued that the State was arguing that IDOC could ignore an order of the Prisoner Review Board and "indefinitely extend an inmate's detention." Lathon agreed that "a brief delay to re-approve his host site" would not have been "unlawful." His claim was that "the 35 days it took to approve a host site that had already been approved was unreasonable." Lathon argued that the State did not suggest that 35 days was " 'expeditious' " and it failed to offer any excuse "for this unconscionable delay." The State's own violation of its own internal rule to release eligible inmates as expeditiously as possible was, Lathon argued, evidence of negligence, and he cited in support *Hoffman v. Northeast*

*Illinois Regional Commuter R.R. Corp.*, 2017 IL App (1st) 170537, ¶ 47 (violation of an internal rule can constitute some evidence of negligence), and *Vasquez v. State*, 67 Ill. Ct. Cl. 176, 178 (2015) (a claimant was awarded $11,800 in damages for negligent incarceration, where IDOC acted negligently in calculating and failing to correct his release date, resulting in 59 extra days in custody beyond the agreed sentence stated in his plea agreement).

¶ 16        Lathon argued that the State was arguing that he was asking for review of IDOC's policies and decision, but such was not the case. Lathon stated that he was trying to hold the State responsible for the negligent conduct of IDOC employees. Lathon argued that the State's cite of *Terry*, 60 Ill. Ct. Cl. 298, was inapposite because in that case, the prisoner sought to challenge his then-current imprisonment, whereas Lathon was not asking the court to determine whether he was being illegally held, since he had already been released.

¶ 17        On October 24, 2019, the Court of Claims granted the State's motion to dismiss Lathon's claim, on the ground that it lacked jurisdiction to hear his claim that he was "improperly held for thirty-five (35) days beyond his release date." The court found that it had "consistently held that it lacks jurisdiction over reviewing or interfering with the policies and decisions" of IDOC, citing *White v. State*, 49 Ill. Ct. Cl. 187, 188-89 (1996) (the Court of Claims found that it did not have jurisdiction to review an inmate's claim that IDOC employees violated his due process rights by failing to examine evidence material to his defense at a prison disciplinary hearing).

¶ 18        On November 26, 2019, Lathon's counsel filed a petition for rehearing, asserting that the court had misapprehended the nature of his claim, where he had not advanced any claim about his release date and where he was not challenging a policy or decision of IDOC, but rather seeking compensation for the negligent conduct of state employees. To make the nature

of his claim crystal clear, he sought to file an amended complaint, which he attached to his petition for rehearing. On June 29, 2020, the Court of Claims ordered the State to file a response to Lathon's petition for rehearing within 30 days, but the State failed to file any response. Almost a year after ordering the State to respond and almost two years after its initial decision, the Court of Claims denied, on May 11, 2021, Lathon's petition for rehearing, finding that Lathon "continues to argue that [he] was improperly held beyond his release date."

¶ 19                               C. Before the Circuit Court

¶ 20        On June 8, 2021, Lathon filed a "Petition for Common Law Writ of Certiorari" in the circuit court of Cook County, seeking review, on the ground that the Court of Claims had deprived him of due process, specifically, of an opportunity to be heard. Lathon argued among other things that the Court of Claims refused to consider his claim, by mischaracterizing it as a challenge to a policy decision, when he had not challenged any policy decision. On December 2, 2021, the Court of Claims moved to dismiss, and on January 18, 2022, Lathon responded to that motion. On July 15, 2022, Lathon filed a motion for judgment on the pleadings, in which he argued, among other things, that the Court of Claims had arbitrarily relabeled his claim.

¶ 21        On August 19, 2022, the Court of Claims filed a combined response to Lathon's motion and a motion for summary judgment, in which it argued, among other things, that it had not mischaracterized Lathon's claims, that Lathon had submitted a parole plan to live with his sister but that the record did not reflect when he submitted it. However, the Court of Claims did not suggest that it was Lathon's responsibility to submit a plan, and Lathon alleged in his petition that if IDOC was acting reasonably it would have approved his plan by November 21,

2017, or seven days after the board's order.[4] The Court of Claims did argue that, to the extent that Lathon claimed that he was detained longer than required, it was his responsibility to obtain a judicial ruling first and then return to the Court of Claims for further relief, citing *Terry*, 60 Ill. Ct. Cl. at 299. On September 2, 2022, Lathon filed a response, in which he argued that the State has never explained why it took 35 days to approve his release plan, and that the State has never argued that this 35-day delay was expeditious, reasonable, or non-negligent.

¶ 22     On January 23, 2023, the trial court heard argument via Zoom, and the transcript is in the record. At the hearing, the trial court asked why the 35-day delay occurred:

> "THE COURT: Did Mr. Lathon ever f[i]nd out why it took 35 days between the decision and the release agreement and date? He didn't, did he?
>
> ASSISTANT ATTORNEY GENERAL (AAG): I don't believe there's any evidence to that point, Your Honor. And I agree with [Lathon's attorney] that that information isn't known."

The AAG also noted that it was not known "how long actually passed between when" the plan was submitted and when it was approved. Lathon's counsel responded that he did not "know if there's something in the record showing exactly when Mr. Lathon submitted the plan for re-approval." However, he argued that "the basis for our negligence claim [was] that 35 days is not expeditious" and that any lack of evidence shows why the case should go forward into discovery.

¶ 23     On March 3, 2023, the circuit court issued an order granting the Court of Claims summary judgment. The circuit court found that the Court of Claims had "construed Lathon's

---

[4]Lathon's petition alleged that his "parole plan would have been approved on or before November 21, 2017[,] had the state employees for processing the parole plan exercised reasonable care and due diligence."

claims as challenging policy because it relied on the State's argument that IDOC has discretion in interpreting what 'expeditiously' means." Pursuant to that reasoning, "the correct release date was within IDOC's discretion, regardless of how long it took."

¶ 24 The circuit court acknowledged that "the Court of Claims seems to have conflated a challenge to IDOC's 'policy or decision' [cite omitted] with a challenge to the actions taken to implement that policy or decision." Lathon did not challenge the policy, but rather he "challenged the implementation of a policy he agreed with," namely, expeditious release. However, even if the Court of Claims erred in construing Lathon's claim as a challenge to policy, the circuit court found that the Court of Claims could "make this misapprehension without abridging due process," and the circuit court cited in support *Reichert*, 203 Ill. 2d at 261 ("Due process is not abridged" when the Court of Claims "misconstrues the law or otherwise commits an error for which its judgment should be reversed."), and *Barnes v. Illinois Court of Claims*, 2021 IL App (4th) 190774-U, ¶ 14 (where an inmate asserted that the State had changed his claim from reimbursement for IDOC's confiscation of his property to simply a claim challenging IDOC's confiscation, he did not plead facts raising a due process claim).

¶ 25 On March 13, 2023, Lathon filed a timely notice of appeal, and briefing for this appeal followed.

¶ 26                                            ANALYSIS

¶ 27                                    A. Standard of Review

¶ 28 In the case at bar, the circuit court granted summary judgment in favor of respondent. Summary judgment is generally appropriate when the record, viewed in a light most favorable to the nonmovant, fails to establish a genuine issue of material fact, thereby entitling the moving party to judgment as a matter of law. *Zurich American Insurance Co. v. Infrastructure*

*Engineering, Inc.*, 2023 IL App (1st) 230147, ¶ 17; 735 ILCS 5/2-1005(c) (West 2020). Summary judgment can be an expeditious manner of disposing of a lawsuit, but it should be utilized only when the movant's right to judgment is clear and free from doubt. *Zurich*, 2023 IL App (1st) 230147, ¶ 17. On appeal, a reviewing court will consider *de novo* the circuit court's decision to grant summary judgment. *Id. De novo* review means that we perform the same analysis that a circuit court would, and that we owe no deference to the trial court's decision. *People v. Avdic*, 2023 IL App (1st) 210848, ¶ 25.

¶ 29   Since Lathon's petition sought review of a Court of Claims decision, a little background information about the Court of Claims is in order, before we review the circuit court's decision.

¶ 30               B. Court of Claims

¶ 31   The 1970 Illinois Constitution (Ill. Const. 1970, art. XIII, § 4) abolished sovereign immunity in our state, "[e]xcept as the General Assembly may provide by law." Acting under this grant of authority, the General Assembly provided that "the State of Illinois shall not be made a defendant or party in any court," except as provided in certain statutes, such as the Court of Claims Act (Act) (705 ILCS 505/1 *et seq.* (West 2020)). Pursuant to this Act, the General Assembly granted to the Court of Claims exclusive jurisdiction to hear and determine claims against the State, including all claims sounding in statute, contract or tort. *Id.* § 8(a), (b); *People v. Philip Morris, Inc.*, 198 Ill. 2d 87, 96 (2001) (the Act gives the Court of Claims exclusive jurisdiction over all cases against the State).

¶ 32   In contrast to the circuit or appellate courts of this state, which are provided for in our constitution (Ill. Const. 1970, art. VI, § 1), the Court of Claims is an entity created by the General Assembly, consisting of seven judges appointed by the governor with the advice and consent of the senate. 705 ILCS 505/1 (West 2020). Unlike the constitutionally created courts

whose function is to adjudicate cases, the purpose of the Court of Claims is to receive and resolve claims against the state. *Philip Morris, Inc.*, 198 Ill. 2d at 97.

¶ 33          The legislative act, which created the Court of Claims, does not provide a method of review for Court of Claims decisions. *Reichert*, 203 Ill. 2d at 261 ("The Act provides no method of review ***."); *Krozel v. Court of Claims*, 2017 IL App (1st) 162068, ¶ 14. Although the Act did not provide a means of review, our supreme court has held that "*certiorari* is available to address alleged deprivations of due process by the Court of Claims." *Reichert*, 203 Ill. 2d at 261; *Krozel*, 2017 IL App (1st) 162068, ¶ 14.

¶ 34                              C. Writ of *Certiorari*

¶ 35          *Certiorari* is both (1) a review procedure whereby the circuit court acts as a court of review and (2) a new cause of action filed against the Court of Claims as respondent. *Reichert*, 203 Ill. 2d at 260-61. The purpose of *certiorari* review is to lay the entire record of the Court of Claims before the circuit court, for the circuit court to determine, from the record alone, whether reversal is required. *Id.* at 260.

¶ 36          Although a petition for a writ of *certiorari* may be used as a vehicle to review a Court of Claims decision, the review is limited in scope to alleged violations of due process. In this context, due process generally means: (1) "an orderly proceeding in which a party receives adequate notice": and (2) "an opportunity to be heard." *Id.* at 261;[5] *Krozel*, 2017 IL App (1st) 162068, ¶ 14; *Estate of Pessin v. State*, 302 Ill. App. 3d 417, 420 (1999) (an opportunity to be heard means being "heard in a meaningful time and manner"). "[C]*ertiorari* may not be used

---

[5]While *Reichert* is useful in setting forth general principles, its facts are completely different from the facts here. In *Reichert*, the supreme court found that it lacked jurisdiction because the Court of Claims had not yet rendered a final judgment in the case before it. *Reichert*, 203 Ill. 2d at 263 ("no final judgment had been rendered by the Court of Claims" rendering the claimant's *certiorari* petition premature). By contrast, there is a final judgment in the case at bar, namely, a grant of summary judgment.

to review the correctness of a decision by the Court of Claims based upon the merits of the case before it." *Reichert*, 203 Ill. 2d at 261; *Krozel*, 2017 IL App (1st) 162068, ¶ 14. "Due process is not abridged where" the Court of Claims "misconstrues the law or otherwise commits an error for which its judgment should be reversed." *Reichert*, 203 Ill. 2d at 261; *Krozel*, 2017 IL App (1st) 162068, ¶ 14. However, a reviewing court may consider whether the Court of Claims is acting beyond its "grant of authority," if it applies its own independent judicial interpretation to statutory terms and its interpretation has no basis in law. *Krozel*, 2017 IL App (1st) 162068, ¶ 23. Also, when a writ of *certiorari* is sought, a court of review should consider whether the underlying decision was supported by some evidence of record. See *Fillmore v. Taylor*, 2019 IL 122626, ¶ 57; *Pessin*, 302 Ill. App. 3d at 420 (a trial court must consider "whether or not the Court of Claims' decision was totally unreasonable and arbitrary with no factual or legal basis").

¶ 37     It is important to remember that, although Lathon has made two types of claims, only one type is in front of us now. Lathon made (1) a tort claim alleging negligence by state employees and (2) a claim that the Court of Claims violated his due process rights. Only his due process claims are before us. We discuss the tort claim only insofar as it impacts our due process analysis.

¶ 38                              D. Claims on Appeal

¶ 39     Lathon argues on appeal that the Court of Claims denied him due process (1) by denying him the opportunity to be heard and (2) by relying on made-up facts.

¶ 40                         1. The Opportunity to Be Heard

¶ 41     Lathon argues that he was denied the opportunity to be heard because the Court of Claims did not rule on the claim that he made. In support, he cites the U.S. Supreme Court case

of *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982), in which the U.S. Supreme Court reversed the Illinois Supreme Court and found that a state agency had violated a claimant's due process right to be heard. In *Logan*, our state had set up a process by state statute pursuant to which a claimant, who had been subject to discriminatory employment practices, could bring a claim before the Illinois Fair Employment Practices Commission. *Id.* at 424-25. In the *Logan* case, the commission failed to hold a hearing within the 120 days provided by statute, and the Illinois Supreme Court ruled that the claim had to be dismissed for lack of jurisdiction. *Id.* at 426-27. The U.S. Supreme Court reversed, finding that "a cause of action is a species of property protected by the Fourteenth Amendment[ ]" (*id.* at 428) and that, at a minimum, its deprivation required " 'notice and opportunity for hearing appropriate to the nature of the case.' " *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). In *Logan*, the U.S. Supreme Court found "no meaningful distinction" between the civil cause of action at issue in *Mullane* and "Logan's right to use the FEPA's adjudicatory procedures." *Id.* at 429. Similarly, in the case at bar, we cannot find any meaningful difference between the right to use the employment commission's statutorily created procedures and Lathon's right to use the Court of Claims statutorily created procedures. Thus, pursuant to *Logan*, Lathon has a right to due process and a right to be heard.

¶ 42    In *Logan*, the court repeated throughout its opinion that a claimant's right to be heard was the right to be heard " 'on the merits of his cause' " (*id.* at 429 (quoting *Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 209 (1958))), and " 'upon their claimed right[s]' " (*id.* at 430 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 380 (1971)). See *Pessin*, 302 Ill. App. 3d at 420 (an opportunity to be heard means being "heard in a meaningful time and manner"). After providing quotes from

past cases, the court summed it up by saying: "As our decisions have emphasized time and again, the Due Process Clause grants the aggrieved party the opportunity to present his case and have its merits fairly judged." *Logan*, 455 U.S. at 433. This right is " 'not diminished by the fact that the State may have specified its own procedures,' " since minimum due process requirements are a matter of federal law. *Id.* at 432 (quoting *Vitek v. Jones*, 445 U.S. 480, 491 (1980)). Thus, like in *Logan*, Lathon's due process rights are not diminished by the fact that the State has specified its own procedures, and he has the right to have judged the merits of his claim judged.

¶ 43                                        2. The Merits of His Claim

¶ 44            In its October 24, 2019, order, the Court of Claims stated that Lathon's claim was "that he was improperly held for thirty-five (35) days beyond his release date."[6] The court held: "The Court of Claims has consistently held that it lacks jurisdiction over reviewing or interfering with the policies and decisions of the IDOC. *White v. State*, 49 Ill. Ct. Cl 187, 189 (1997)." "As a result," the court found that it lacked jurisdiction to hear his claim. In *White*, the Court of Claims found that it "does not have jurisdiction to review the disciplinary and administrative policies and decisions of the Illinois Department of Corrections." *White*, 49 Ill. Ct. Cl. at 189.

¶ 45            However, Lathon is not arguing that he was held beyond his release date, and he is not challenging a policy or decision by IDOC. He is arguing that IDOC employees were negligent in completing their duties, resulting in his being in jail significantly longer. The circuit court acknowledged that the Court of Claims had "misapprehen[ded]" Lathon's claim. The circuit

---

[6]In its May 2021 order, the court again stated that Lathon's claim was that he was "held beyond his release date."

court noted that Lathon agreed with IDOC's "policy" of expeditious release and agreed with its "decision" that his parole should resume. The circuit court noted that, even if one cast the " 'decision' " as "the approval of his parole plan, Lathon no doubt agrees with that decision too." However, the circuit court found that the Court of Claims was permitted to "misapprehend[d]" a claimant's claims "without abridging due process."

¶ 46 The circuit court's statement squarely poses for us the following question. How far can the Court of Claims go from the actual claim before one can say that the claimant's claim is not being heard? If a claimant, for example, sought compensation for the negligent delay of his MSR, and the claim was recast as a claim seeking compensation for a confiscated lamp, obviously we could not say that the claimant was being heard.[7]

¶ 47 In the case at bar, the claimant is alleging a month's delay. What if the delay was one year or two—or the full three-year MSR period, such that he never received the supervised release that the legislature contemplated and believed necessary for his transition to civilian life? The purpose of "mandatory" and "supervised" release is "to assist the subject in leading a law-abiding life." 730 ILCS 5/3-3-7(a) (West 2020).

¶ 48 The State does not argue that 35 days is reasonable,[8] but rather that any period is beyond a court's jurisdiction to review. Under the State's theory, even if the delay was a couple

---

[7] In *Barnes*, 2021 IL App (4th) 190774-U, ¶ 6, a nonprecedential case, the Court of Claims dismissed an inmate's claim for lack of jurisdiction where he challenged IDOC's administrative policy to confiscate as contraband any lamps with removeable lightbulbs. Apparently misunderstanding the meaning of both confiscation and contraband, the inmate argued that the court misconstrued his claim, in that he was not arguing that they could not confiscate the lamp as contraband, but he wanted money for it. *Barnes*, 2021 IL App (4th) 190774-U, ¶ 14. In dicta, the court made a broad statement that, "[a]dditionally," his claim that this " 'was not the claim' " he made was not reviewable. *Barnes*, 2021 IL App (4th) 190774-U, ¶ 15. While a correct outcome in that case, if such an assertion was taken too far, it would swallow the due process guarantee to be heard.

[8] The Court of Claims has previously found in a negligent imprisonment case that a 59-day delay was "substantial." *Vasquez v. State of Illinois*, 67 Ill. Ct. Cl. 176, 178 (2015).

of years, we would lack jurisdiction to review, so long as it did not go beyond the statutorily imposed three-year MSR term. Not only would that violate the legislative intent in having MSR in the first place, it would make a mockery of the decision of the Prisoner Review Board that ordered him released. The legislature has directed that "[t]here shall be a Prisoner Review Board independent of [IDOC]." *Id.* § 3-3-1(a). It is the Prisoner Review Board that is "the authority" for setting MSR conditions and sanctions for violations, not IDOC. *Id.* § 3-3-1(a)(5). [9] It is not in IDOC's discretion to impose a sanction by negligent delay (if that is what happened), where the board has imposed none.

¶ 49    In *White*, where the Court of Claims found jurisdiction lacking, the claimant did not allege negligence, but rather challenged the process of the prison's disciplinary proceeding and claimed that it violated due process. *White*, 49 Ill. Ct. Cl. at 189. Unlike the prison disciplinary proceeding at issue in *White*,[10] the MSR violation at issue here is not something IDOC has discretion over. That authority belongs not to IDOC, but to the board, an entity that our legislature decreed independent of IDOC.

¶ 50    In contrast to *White*, the Court of Claims has repeatedly exercised jurisdiction over, and decided, claims of negligent imprisonment. *Vasquez*, 67 Ill. Ct. Cl. at 178 (the Court of Claims awarded $11,800 to a former inmate for negligent imprisonment, where IDOC negligently calculated his sentencing credit); *Evans v. State*, 55 Ill. Ct. Cl. 395, 397 (2002) (finding that IDOC employees could be liable for "a negligent performance—or a nonperformance," the Court of Claims held a trial on a former inmate's negligent imprisonment claim and awarded

---

[9]The Prisoner Review Board is "the authority for setting conditions for parole and mandatory supervised release under Section 5-8-1(a) of this Code, and determining whether a violation of those conditions warrant revocation of parole or mandatory supervised release or the imposition of other sanctions." 730 ILCS 5/3-3-1(a)(5) (West 2020).

[10]The Illinois Administrative Code delegates the authority over prison disciplinary proceedings to IDOC. See generally 20 Ill. Adm. Code 504.15 (1998); 20 Ill. Adm. Code 504.80 (2017).

him $900, due to the failure of IDOC employees to investigate his sentencing-credit claim); see *Pitts v. State*, 51 Ill. Ct. Cl. 29 (1999) (the Court of Claims held an evidentiary hearing and awarded $7500 for negligent imprisonment). In *Vasquez* and *Evans*, cited by Lathon, IDOC had held the claimants past their release date. Lathon does not claim that he was held past his release date, but that is the way that the Court of Claims mischaracterized his claim. If the Court of Claims is permitted to misapprehend his claim, as the circuit court found, shouldn't it then be required to apply the law that applies to the misapprehended claim?[11] We do not intend to answer this question but, rather, we pose it to show the flaw in the trial court's logic. There is a difference between misapplying the law and reviewing a different claim.

¶ 51    This was not a case where a court valiantly struggled to make sense of a *pro se* prisoner's claim. This claim was precisely drafted by an attorney. There was little reason for recasting.

¶ 52    The majority of negligent imprisonment cases cited by Lathon, in which the Court of Claims exercised jurisdiction, all involved something that IDOC did not have discretion over, namely, judicially determined release dates. Similarly, in the case at bar, the claimant's release post-violation was determined by the board, not IDOC. Where the State has abandoned any argument that this particular period of 35 days was reasonable, we cannot find that the board's order delegated to IDOC the discretion to hold claimant for any period whatsoever without excuse or stated reason and still be in compliance with its order. *Cf. Fillmore*, 2019 IL 122626, ¶ 60 (IDOC's denial of an inmate's proposed witnesses and evidence in a disciplinary proceeding "without an explanation" violated his due process rights, in a *certiorari* case).

---

[11] While contractions do not normally appear in published opinions, it is appropriate here to show the tongue-in-cheek nature of the question.

¶ 53     For all the foregoing reasons, we must find that Lathon was not given an opportunity to be heard on the claim that he made.

¶ 54                                  3. Made-Up Facts

¶ 55     Lathon also alleges that he was denied due process when the Court of Claims relied upon made-up facts. In its May 11, 2021, order the Court of Claims found that "a signed agreement" between Lathon and IDOC provided that Lathon "was released on the correct agreed upon date." The order also stated that: "On October 24, 2019, this Court found that [Lathon] was released on the proper date." Lathon argues that these facts are made up, where (1) he never agreed that December 19, 2017, was the "correct" date for his release and (2) the Court of Claims made no finding in its prior order that he was released "on the proper date." In response, the State agrees that, "[t]o be sure, the MSR agreement did not waive objections to the amount of time it took to administer [his] release." Since we have already found reversal is required, we need not consider this issue.

¶ 56     Justice Tailor disagrees with our whole premise that there is a limit to how far you can go from addressing a claim and still be said to have heard it. The bottom line is who cares how many hearings the court gives you or papers it allows you to file if the court will not acknowledge the argument that you are making in those hearings or pleadings. Here, the respondent is arguing about specific acts of negligence, but the court instead says "no, you're challenging the policy." That is the equivalent of giving someone a basket of apples and they say thank you for the oranges: how you categorize the fruit determines how you eat it. Similarly, how you classify the claim determines how you analyze it. Under Justice Tailor's view, so long as a claimant had a hearing and could file papers, it does not matter how far afield the court went from the merits of his claim; for the dissent, there are no limits, and the

19

classification does not matter. If an inmate was detained an additional one, two, or even three years, we would have to find, under his view, no jurisdiction and no recourse. Luckily, the courts have not so held (*supra* ¶ 50), and due process requires more than a rubber stamp on a deaf procedural process.

¶ 57    Justice Tailor also reworks both our findings and Lathon's argument. In the dissent's opening paragraph, he says that the "majority finds" that "the Court of Claims reframed the issue." *Infra* ¶ 64. No, we found that they addressed a different issue and failed to address the claim that claimant made. The dissent states that we posited the issue as, " '[i]f the Court of Claims is permitted to misapprehend the claim, as the circuit court found, shouldn't it then be required to apply the law that applies to the misapprehended claim.' " *Infra* ¶ 66. That is incorrect; that is not how we posited the issue. We explicitly said that this was not a question that needed to be answered "but, rather, we pose it to show the flaw in the trial court's logic." *Supra* ¶ 50. Justice Tailor asserts repeatedly that Lathon's "actual" argument on appeal is different from what he argued. *Infra* ¶¶ 64, 71.

¶ 58    Justice Tailor asserts that Lathon was "afforded a full hearing on his claim." *Infra* ¶ 68. No, it is beyond dispute that there was no hearing or decision on the merits and no discovery, and instead, Lathon's claim was dismissed for lack of jurisdiction. Due to the dismissal, the case never proceeded to a full hearing on his claims. That fact is a given in this case. The question is whether, when ordering that dismissal, the court considered a different claim than the one Lathon made.

¶ 59    Justice Tailor argues that we cite *Logan* for the proposition that a full hearing on the merits must be held in every case, and that this proposition must be wrong, because as the *Logan* court pointed out, cases can be dismissed for being beyond the statute of limitations, for

20

example. No one here is disputing the right of states to set up statutes of limitations. This is setting up a straw man. We cited *Logan* for two points: namely, that when a litigant's claim is considered, it is " 'his cause' " that is at issue (*Logan*, 455 U.S. at 429 (quoting *Societe Internationale*, 357 U.S. at 209)) and that his federal due process rights are " ' "not diminished by the fact that the State may have specified its own procedures," ' " since minimum due process requirements are a matter of federal law. *Supra* ¶ 42 (quoting *Logan*, 455 U.S. at 432 (quoting *Vitek*, 445 U.S. at 491)). These two points are as bedrock as when the *Logan* court noted them.

¶ 60                                    CONCLUSION

¶ 61           Where the Prisoner Review Board ordered a 67-year old inmate with throat cancer returned to MSR without sanctions despite his MSR violation and ordered his MSR "resumed"; where the claimant argues that, despite the no-sanction order, IDOC employees nonetheless detained him for an additional 35 days through negligence; where the State did not argue that the 35-day delay was reasonable or non-negligent or offer any excuse or reason for it but instead argued that any period up to the MSR term was within IDOC's discretion; and where the Court of Claims misstated his claim as challenging an IDOC decision or policy when he sought compensation for negligence, we cannot find that he has been afforded an opportunity to be heard regarding his specific claim of negligence, as due process requires, and so must reverse.

¶ 62           Reversed.

¶ 63           JUSTICE TAILOR, dissenting:

¶ 64           I disagree with the majority's finding that Lathon's *writ of certiorari* claim should have been granted in the circuit court. The majority finds that Lathon was denied due process in that

21

he was denied an opportunity to be heard where the Court of Claims reframed the issue that he raised. However, because Lathon's actual argument on appeal is that the Court of Claims' decision was erroneous, we lack subject matter jurisdiction to grant *certiorari* review. I respectfully dissent.

¶ 65        The legislative act, which created the Court of Claims, does not provide a method of review for decisions of the Court of Claims. *Reichert v. Court of Claims*, 203 Ill. 2d 257, 261 (2003); *Krozel v. Court of Claims*, 2017 IL App (1st) 162068, ¶ 14. Courts lack jurisdiction to conduct the type of merits-based review that they often undertake of agency decisions, whether by means of the Administrative Review Law or *certiorari*. *Reichert*, 203 Ill. 2d at 261. A limited exception to that rule is that deprivations of due process by the Court of Claims may be addressed by *certiorari*. *Id.* The Court of Claims will have afforded due process to a party when it "conduct[s] an orderly proceeding in which a party receives adequate notice and an opportunity to be heard." *Id.* However, "[d]ue process is not abridged where a tribunal misconstrues the law or otherwise commits an error for which its judgment should be reversed." *Id.* In short, "*certiorari* may not be used to review the correctness of a decision by the Court of Claims based upon the merits of the case before it." *Id.*; see *Jaros v. Illinois Court of Claims*, 2021 IL App (2d) 200397, ¶¶ 29-30; *Krozel*, 2017 IL App (1st) 162068, ¶ 14; *Hastings v. State*, 2015 IL App (5th) 130527, ¶ 17; *Reichert v. Court of Claims*, 389 Ill. App. 3d 999, 1002-04 (2009) ("Reichert II"); *Reyes v. Court of Claims*, 299 Ill. App. 3d 1097, 1105 (1998) (collectively finding that certiorari may only be used to address alleged deprivations of due process not to review whether a court has issued a correct decision on the merits).

¶ 66        The issue before this court is whether Lathon received due process in the Court of Claims, not, as the majority posits, (1) "[h]ow far can the Court of Claims go from the actual

22

claim before one can say that the claimant's claim is not being heard" (*supra* ¶ 46) or (2) "[i]f the Court of Claims is permitted to misapprehend his claim, as the circuit court found, shouldn't it then be required to apply the law that applies to the misapprehended claim." *Supra* ¶ 50; see *Reichert*, 203 Ill. 2d at 261. The record establishes that Lathon was provided with procedural due process in that he was given both notice and a meaningful opportunity to be heard.

¶ 67 An opportunity to be heard is just that, "an opportunity to present [a] claim of entitlement." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434 (1982). The majority's reliance on *Logan*, to support its finding that procedural due process entails a right to be heard on "the merits" in every controversy where the State has specified its own procedure is incorrect as *Logan* clearly found otherwise. *Supra* ¶ 42. Logan sued after he was denied an opportunity to be heard on his employment discrimination claim due to a statutory timing procedural bar (subsequently eliminated), the application over which he had no control. *Logan*, 455 U.S. at 424-37. At the time, a provision in the Fair Employment Practices Act stated that the Fair Employment Practices Commission "shall" schedule a factfinding conference within 120 days of the filing of a discrimination charge. Ill. Rev. Stat. 1979, ch. 48, ¶ 858(b). Despite this statutory time frame, a Commission employee inadvertently scheduled the conference for the 125th day. *Logan*, 455 U.S. at 426-27. The Illinois Supreme court found that Logan's claim had to be dismissed for lack of jurisdiction. *Id.* The United States Supreme Court reversed, holding that Logan had a protected property interest in the continuation of his cause of action such that it could not be eliminated by the State's failure to act. *Id.* 436-38. The Court wrote:

"[N]othing *** entitles every civil litigant to a hearing on the merits in every case. The State may erect reasonable procedural requirements for triggering the right to an

adjudication, be they statutes of limitations, [citation], or, in an appropriate case, filing fees. [Citation.] And the State certainly accords due process when it terminates a claim for failure to comply with a reasonable procedural or evidentiary rule. [Citations.] What the Fourteenth Amendment does require, however, is an opportunity...granted at a meaningful time and in a meaningful manner, [citation] for [a] hearing appropriate to the nature of the case. [Citation.]" (Emphases and internal quotation marks omitted.) *Id.* at 437.

¶ 68        Unlike *Logan*, Lathon was not prevented from being heard as a result of the State's failure to act. Contrary to the majority's finding, Lathon was afforded a full hearing on his claim and then a full hearing on his petition for reconsideration, as required by *Logan*. The Court of Claims dismissed Lathon's action only after hearing argument on the merits of his claims, evaluating those claims, and determining that they fell outside its jurisdiction. More specifically, Lathon filed his complaint alleging negligent incarceration and false imprisonment claims against the Illinois Department of Corrections (Department) on the basis that he was incarcerated for one month more than he should have been. After that, status hearings were held by a Court of Claims commissioner, the State produced documents to Lathon, and the State advised the tribunal and Lathon that it planned to file a motion to dismiss the action. Thereafter, the State moved to dismiss Lathon's complaint, arguing that the complained of matters pertained to issues related to the Department's discretion, and therefore Lathon did not allege cognizable tort claims within the Court of Claims' jurisdiction to hear. Lathon responded to the State's motion to dismiss and argued that his claims were misunderstood and did not involve departmental policy. Upon considering that briefing, the Court of Claims dismissed Lathon's action finding that his claims involved challenges to the

24

Department's administration of parole matters, issues that were subject to its discretion and did not give rise to tort liability for damages.

¶ 69        The Court of Claims then reviewed Lathon's petition to reconsider its dismissal of his claims, in which he reiterated that his claims were misunderstood and that he was not challenging the Department's policy. The Court of Claims reviewed the petition, specifically noting Lathon's belief that his claims were "misapprehended," but determining nothing Lathon argued warranted reversing its dismissal.

¶ 70        Based on this record, Lathon received procedural due process in the Court of Claims. He received adequate notice and an opportunity to be heard which is what the law requires. *Reichert*, 203 Ill. 2d at 261. Were we to hold that the narrow due process exception applies every time the Court of Claims is alleged to have misapprehended a claimant's claim, the general rule that the court lacks subject matter jurisdiction to review the correctness of a Court of Claims decision would be swallowed by the exception. That is so even in a case like this where Lathon alleged that the Department negligently extended his period of incarceration. See *Reyes*, 299 Ill. App. 3d at 1105 ("[d]ue process does not guarantee against erroneous or unjust decisions").

¶ 71        I would also note that although the Court of Claims stated that Lathon did not allege cognizable tort claims that fell within its jurisdiction, the court did find that Lathon's claims implicated the Department's discretion in administering its parole procedures. This highlights that Lathon's actual contention is that the Court of Claims "misconstrue[d] the law or otherwise commit[ed] an error for which its judgment should be reversed," which cannot form the basis for a *certiorari* action. *Reichert*, 203 Ill. 2d at 261.

¶ 72        Accordingly, I would find that Lathon was not deprived of procedural due process and the court lacks subject matter jurisdiction to hear his claim.

---

*Lathon v. Court of Claims of Illinois*, **2024 IL App (1st) 230477**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 21-CH-2802; the Hon. Alison C. Conlon, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Joel A. Flaxman and Kenneth N. Flaxman, of Kenneth N. Flaxman Law, P.C., of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Laura Wunder, Assistant Attorney General, of counsel), for appellee. |

---